IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LEROY KNARR,                                    08-CV-832-BR

        Plaintiff,                              OPINION AND ORDER

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.


MERRILL SCHNEIDER
Schneider Law Offices
14415 SE Stark
P.O. Box 16310
Oregon City, OR 97292
(503) 255-9092

        Attorneys for Plaintiff


1   -   OPINION AND ORDER

**KARIN J. IMMERGUT**
United States Attorney's Office
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**THOMAS M. ELSBERRY**
**DAPHNE BANAY**
**DAVID M. BLUME**
Special Assistant United States Attorneys
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
(206) 615-2112

        Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Leroy Knarr seeks judicial review of a final

decision of the Commissioner of the Social Security

Administration (SSA) in which he found Plaintiff ineligible for

Supplemental Security Income (SSI) payments under Title XVI of

the Social Security Act.  42 U.S.C. §§ 1381-83(f).  This Court

has jurisdiction to review the Commissioner's decision pursuant

to 42 U.S.C. § 405(g).

    Following a thorough review of the record and for the

reasons that follow, the Court **REVERSES** the decision of the

Commissioner and **REMANDS** this matter pursuant to sentence four of

42 U.S.C. § 405(g) for further administrative proceedings

consistent with this Opinion and Order.

2   -   OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Plaintiff filed his most recent application for SSI payments on January 4, 2005, alleging an onset date of October 25, 2002. Tr. 66, 72-73.[1]  The application was denied initially and on reconsideration.  Tr. 51-54, 47-49.  An Administrative Law Judge (ALJ) held a hearing on June 7, 2007.  Tr. 257-84.  At the hearing, Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified.  Tr. 260-83.

The ALJ issued an opinion on July 25, 2007, in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 16-25.  That decision became the final decision of the Commissioner on May 16, 2008, when the Appeals Council denied Plaintiff's request for review.  Tr. 5-8, 253-56.

## BACKGROUND

Plaintiff was born on July 16, 1957, and was 49 years old at the time of the hearing.  Tr. 23, 271.  Plaintiff has previously worked as a warehouse laborer.  Tr. 260-61, 263, 271.  Plaintiff has a limited education and has difficulty reading and writing. Tr 265, 277.  Except when noted below, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After reviewing the medical records, this Court adopts the ALJ's

---

[1] Citations to the official transcript of record filed by the Commissioner on December 3, 2008, are referred to as "Tr."

summary of the medical evidence.  *See* Tr. 18-23.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility,

resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Although the court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision, *Robbins,* 466 F.3d at 882, the court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006). The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).

## DISABILITY ANALYSIS

### The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity (SGA). *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 416.920(a)(4)(i).

In Step Two, the claimant is not disabled if the

Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude SGA. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must determine the claimant's residual functional capacity (RFC), which "is an assessment of the sustained, work-related physical and mental activities" that the claimant can still do "on a regular and continuing basis" despite his limitations. 20 C.F.R. § 416.920(e). *See also* Soc. Sec. Ruling (SSR) 96-8p. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the

claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.960(c)(1).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One, the ALJ found that Plaintiff "may have" engaged in SGA for six months in 2005 but had not engaged in any SGA since that time.  Tr. 18.

At Step Two, the ALJ found Plaintiff has the severe impairments of drug abuse until 2005 and right-knee degenerative joint disease and the nonsevere impairments of borderline intellectual functioning and left-shoulder degenerative joint disease. Tr. 18.

At Step Three, the ALJ found Plaintiff does not have an impairment or a combination of impairments that meets or equals a Listing. Tr. 19-20. The ALJ assessed Plaintiff's RFC and found he can lift 20 pounds occasionally and 10 pounds frequently, can perform simple repetitive tasks involving simple work decisions with little or no variation in routine, and is unable to read. The ALJ also found Plaintiff must be able to sit or stand at will. Tr. 20.

At Step Four, the ALJ found Plaintiff can perform his past relevant work as a warehouse laborer, but the ALJ continued to Step Five because it is not clear from the record that Plaintiff's past relevant work was SGA. Tr. 23.

At Step Five, the ALJ found Plaintiff would be able to perform jobs that exist in significant numbers in the national economy. Tr. 24. The ALJ identified three examples of such work drawn from the testimony of the VE: small-products assembler, laundry worker, and sorter/recycler. Tr. 23-24. Thus, the ALJ concluded Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 25.

## DISCUSSION

Plaintiff contends the ALJ erred by (1) concluding at Step One that Plaintiff "may have" engaged in SGA; (2) finding at Step Two that Plaintiff's left-shoulder degenerative joint disease is not a severe impairment and failing at Step Two to address the severity of Plaintiff's left-knee degenerative joint disease, chronic obstructive pulmonary disease (COPD), and dysthymic disorder; (3) failing at Step Three to evaluate all of Plaintiff's impairments together to determine whether they meet or are equal to a Listing; (4) rejecting the opinion of Eileen McElligott, Family Nurse Practitioner (F.N.P.), as to Plaintiff's functional limitations; and (5) rejecting Plaintiff's testimony as to the side-effects of his medications, all of which resulted in the ALJ posing an inadequate hypothetical to the VE at Steps Four and Five.

## I.   The ALJ's evaluation of Plaintiff's SGA at Step One.

Plaintiff contends the ALJ erred when he found Plaintiff "may have" engaged in SGA in 2005 because Plaintiff's only work in 2005 was performed under "special conditions."

Evidence that a claimant worked under special conditions (*e.g.*, when a claimant is permitted to work at a lower standard of productivity or efficiency than other employees) may indicate the claimant cannot perform SGA.  20 C.F.R. § 416.973(c).

The ALJ found Plaintiff "may have" engaged in SGA in 2005

because on March 23, 2005, Plaintiff reported to John Givi, Ph.D,
Psy.D., that he was working Monday through Friday.  Tr. 174.
Plaintiff also admitted during the hearing that he was working in
2005.  Tr. 260-62, 269-71.  The record, however, does not reflect
Plaintiff performed this work under "special conditions."
Plaintiff points to his testimony that he argued with his
supervisor when he was told to work faster in support of his
contention, however, Plaintiff also admits he was able to perform
his work at the required pace.  Tr. 271.  The ALJ, therefore, did
not err when he found Plaintiff "may have" engaged in SGA at Step
One.

Moreover, the ALJ noted Plaintiff's earnings record for 2005
does not reflect any earnings.  The ALJ, therefore, concluded
only that Plaintiff "may have" been engaged in SGA in 2005, not
that Plaintiff was actually engaged in SGA, and proceeded to
Step Two of the analysis.  Accordingly, if the ALJ erred when he
found at Step One that Plaintiff may have engaged in SGA in 2005,
such error would be harmless.  *See Stout*, 454 F.3d at 1055-56
(9th Cir. 2006)(ALJ's error is harmless when it is "incon-
sequential to the ultimate nondisability determination.").

On this record, the Court concludes the ALJ did not err at
Step One when he found Plaintiff "may have" engaged in SGA in
2005 because the ALJ provided legally sufficient reasons
supported by the record for doing so, and, in any event, if the

ALJ erred at Step One, any such error was harmless.

**II.  The ALJ's evaluation of Plaintiff's impairments at Step Two.**

Plaintiff contends the ALJ erred at Step Two when he found Plaintiff's left-shoulder degenerative joint disease is not a severe impairment and when he failed to address the severity of Plaintiff's left-knee degenerative joint disease, COPD, and dysthymic disorder.

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a). *See also Ukolov*, 420 F.3d at 1003.  The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(a), (b).  Such abilities and aptitudes include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *Id.*

The Step Two threshold is low.  "[A]n impairment can be

11  -  OPINION AND ORDER

considered as not severe only if it is a slight abnormality
which has such a minimal effect on the individual that it would
not be expected to interfere with the individual's ability
to work . . . . [T]he severity regulation is to do no more
than allow the Secretary to deny benefits summarily to those
applicants with impairments of a minimal nature which could never
prevent a person from working." SSR 85-28, at *2 (Nov. 30,
1984)(internal quotations omitted). The Ninth Circuit describes
Step Two as a "*de minimus* screening device to dispose of
groundless claims." *Smolen*, 80 F.3d at 1290. *See also Webb v.
Barnhart*, 433 F.3d 683, 686-88 (9th Cir. 2005). "Great care
should be exercised in applying the not severe impairment
concept." SSR 85-28, at *4.

Medically determinable impairments must be established by
acceptable medical sources. SSR 06-03p provides:

> Information from [non-acceptable medical
> sources] cannot establish the existence of a
> medically determinable impairment. Instead,
> there must be evidence from an "acceptable
> medical source" for this purpose. However,
> information from such "other sources" may be
> based on special knowledge of the individual
> and may provide insight into the severity of
> the impairment(s) and how it affects the
> individual's ability to function.

*See also* 20 C.F.R. § 404.1513(a)(Commissioner needs "evidence
from acceptable medical sources to establish whether [a claimant
has] a medically determinable impairment."). Medical sources are
divided into two categories: "acceptable" and "not acceptable."

12  -  OPINION AND ORDER

20 C.F.R. § 416.902.  Acceptable medical sources include licensed
physicians and psychologists.  20 C.F.R. § 416.902.  Medical
sources classified as "not acceptable" include, but are not
limited to, nurse practitioners, therapists, licensed clinical
social workers, and chiropractors.  SSR 06-03p, at *2.  Although
the claimant has the burden at Step Two to prove he is disabled,
ALJ is to consider "impairment[s]. . . [alleged by the claimant]
or about which we receive evidence" in the form of medical
records.  20 C.F.R. § 1512(a).

### A.    Left-shoulder degenerative joint disease.

The ALJ found Plaintiff's left-shoulder degenerative joint
disease is not a severe impairment because it does not result in
significant work-related functional limitations.  Tr. 19.

The record, however, reflects Plaintiff's left-shoulder
degenerative joint disease results in more than minimal
functional limitations.  For example, on February 16, 2005, Kim
Webster, M.D., an examining physician, noted Plaintiff had
possible bursitis or tendinitis, and that he should be restricted
from reaching overhead, a limitation that can be expected to
interfere with the Plaintiff's ability to work.  Tr. 171.

On this record, the Court concludes the ALJ erred when he
found Plaintiff's left-shoulder degenerative joint disease is not
a severe impairment because the ALJ did not provide legally
sufficient reasons supported by substantial evidence in the

record for doing so.

**B.  Left-knee degenerative joint disease.**

The ALJ did not address the severity of Plaintiff's left-
knee degenerative joint disease at Step Two.

The record reflects Plaintiff has been diagnosed with and
treated for left-knee degenerative joint disease.  For example,
On January 16, 2006, Dr. Ziegler diagnosed Plaintiff with
bilateral knee osteoarthritis and prescribed pain medications.
Tr. 235.  Plaintiff's treating medical source, F.N.P. McElligott,
noted Plaintiff's bilateral knee pain and also prescribed
painkillers.  Tr. 242-43, 248.  F.N.P. McElligott referred
Plaintiff to Richard Carpenter, M.D., an orthopedic physician,
and on February 23, 2006, Dr. Carpenter noted Plaintiff's
bilateral knee pain and diagnosed Plaintiff with chronic
patellofemoral disease of the knees.  Tr. 223, 226.  In addition,
the results of a July 28, 2006, MRI of Plaintiff's left knee
shows multiple subchondral degenerative lucencies in the patella
with a prominent lesion in the anterior intercondylar notch and
advanced degenerative changes in the anterior cruciate.  Tr. 244.
The ALJ was, therefore, required to make a determination as to
the severity of Plaintiff's left-knee degenerative joint disease
at Step Two because it is a "medically determinable impairment"
established by "acceptable medical sources."

On this record, the Court concludes the ALJ erred when

failed to address the severity of Plaintiff's left-knee
degenerative joint disease at Step Two.

### C.   COPD.

The ALJ did not address the severity of Plaintiff's COPD at
Step Two.

The record reflects treating physician Jacquelyn Ziegler,
M.D., and Dr. Webster, an examining physician, both noted
Plaintiff might have COPD and that Plaintiff suffers from
occasional shortness of breath.  Tr. 171, 232.  The record does
not reflect, however, that Plaintiff underwent any objective
testing, diagnosis, or treatment for COPD.  The ALJ, therefore,
was not required to address the severity of Plaintiff's alleged
COPD because it is not a "medically determinable impairment"
established by an "acceptable medical source."

On this record, the Court concludes the ALJ did not err when
he did not address the severity of Plaintiff's alleged COPD.

### D.   Dysthymic Disorder.

The ALJ did not address the severity of Plaintiff's
dysthymic disorder.

The record reflects Plaintiff has been diagnosed with and
treated for dysthymic disorder.  On April 13, 2005, Tracey
Hoffman, Psy.D., an examining physician, noted Plaintiff had
symptoms of depression and diagnosed Plaintiff with dysthymic
disorder related to his physical pain, his failure to maintain an

intact family, and his long-term methamphetamine abuse. Tr. 196.
Dr. Hoffman recommended Plaintiff seek outpatient mental health
services. Tr. 197. On August 15, 2006, and September 20, 2006,
F.N.P. McElligott noted Plaintiff had signs of depression and
prescribed an antidepressant to Plaintiff. Tr. 243. The ALJ
was, therefore, required to make a determination as to the
severity of Plaintiff's dysthymic disorder at Step Two because it
is a "medically determinable impairment" established by an
"acceptable medical source."

On this record, the Court concludes the ALJ erred when he
did not address the severity of Plaintiff's dysthymic disorder at
Step Two.

In summary, the ALJ erred at Step Two when he found
Plaintiff's left-shoulder degenerative joint disease is not a
severe impairment and failed to address the severity of
Plaintiff's left-knee degenerative joint disease and dysthymic
disorder.

### III. The ALJ's evaluation of Plaintiff's impairments at Step Three.

Plaintiff contends the ALJ erred when he failed to evaluate
all of Plaintiff's impairments at Step Three to determine whether
they meet or are equal to a Listing.

"In evaluating a claimant with more than one impairment, the
Commissioner must consider 'whether the combination of your
impairment is medically equal to any listed impairment.'" *Lester*

16 - OPINION AND ORDER

*v. Chater*, 81 F.3d at 829-31 (9th Cir. 1995)(quoting 20 C.F.R. § 404.1526(a)). Here, as noted, the ALJ erred at Step Two when he found Plaintiff's left-shoulder degenerative joint disease is not a severe impairment and did not address the severity of Plaintiff's left-knee degenerative joint disease or dysthymic disorder. Accordingly, the ALJ did not consider all of Plaintiff's impairments together in his analysis at Step Three.

On this record, the Court concludes the ALJ erred at Step Three when he did not evaluate all of Plaintiff's impairments to determine whether they meet or are equal to a Listing.

**IV. The ALJ's evaluation of F.N.P. McElligott's opinion.**

Plaintiff contends the ALJ erred when he rejected the opinion of F.N.P. McElligott, a treating medical source, as to his functional limitations. Tr. 23.

Medical sources are divided into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. § 416.902. Medical sources classified as "not acceptable" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors. SSR 06-03p, at *2. Accordingly, F.N.P. McElligott is a "not acceptable" medical source.

Nonetheless, the Social Security Administration notes:

> With the growth of managed health care in
> recent years and the emphasis on containing

> medical costs, medical sources who are not
> acceptable medical sources, such as nurse
> practitioners, physician assistants, and
> licensed clinical social workers, have
> increasingly assumed a greater percentage of
> the treatment and evaluation functions
> previously handled primarily by physicians
> and psychologists.  Opinions from these
> medical sources, who are not technically
> deemed acceptable medical sources under our
> rules, are important and should be evaluated
> on key issues such as impairment severity and
> functional effects, along with the other
> relevant evidence in the file.

SSR 06-03p, at *3.  Factors the ALJ should consider when

determining the weight to give an opinion from those "important"

sources include:  the length of time the source has known the

claimant and the number of times and frequency that the source

has seen the claimant; the consistency of the source's opinion

with other evidence in the record; the relevance of the source's

opinion; the quality of the source's explanation of his opinion;

and the source's training and expertise.  SSR 06-03p, at *4.  On

the basis of the particular facts and the above factors, the ALJ

may assign a not-acceptable medical source either greater or

lesser weight than that of an acceptable medical source.

SSR 06-03p, at *5-*6.  The ALJ, however, must explain the weight

assigned to such sources to the extent that a claimant or

subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p,

at *6.

On June 3, 2007, approximately one year after she began

treating Plaintiff, F.N.P. McElligott completed a questionnaire

18  -  OPINION AND ORDER

at the request of Plaintiff's counsel in which she found
Plaintiff can lift 20 pounds occasionally and ten pounds
frequently; can stand or walk for up to three hours in an eight-
hour workday and sit for up to three hours "for an unlimited
time" in an eight-hour workday; can perform limited pushing and
pulling with his upper and lower extremities; can occasionally
climb, balance, stoop, kneel, crouch, or crawl; can occasionally
perform reaching in all directions and frequently handle, finger,
or feel; and should avoid frequent exposure to extreme heat and
cold, wetness, humidity, and vibration.  Tr. 229-30.
F.N.P. McElligott opined Plaintiff would miss more than two days
a month from even a routine sedentary job.  Tr. 230.

The ALJ rejected F.N.P. McElligott's opinion as to
Plaintiff's functional limitations in part because she is a "not
acceptable" medical source.  As noted, the ALJ may not reject the
opinion of a "not acceptable" medical source on this basis.

Nonetheless, the ALJ also gave little weight to
F.N.P. McElligott's opinion as to Plaintiff's functional
limitations on the ground that F.N.P. McElligott's opinion is
internally inconsistent and also inconsistent with her treatment
notes.  "[I]ncongruity between [a treating physician's]
questionnaire responses and her medical records" is a legally
sufficient reason to reject treating physician's opinion.
*Tommasetti*, 533 F.3d at 1041.  *See also Weetman v. Sullivan*,

877 F.2d 20, 22-23 (9th Cir. 1989)(the ALJ may reject a treating physician's opinion if it is inconsistent with her treatment notes).  As noted, the sitting limitations F.N.P. McElligott listed in response to the June 3, 2007, questionnaire are internally inconsistent; *i.e.*, Plaintiff can sit for an unlimited period of time, but for only three hours out of an eight-hour work day.  Tr. 229.  In addition, F.N.P. McElligott's treatment notes reflect only that Plaintiff is precluded from activities such as running and jumping, not walking or sitting.  Tr. 242.

On this record, the Court concludes the ALJ did not err when he gave little weight F.N.P. McElligott's opinion as to Plaintiff's functional limitations because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**V.   The ALJ's evaluation of Plaintiff's testimony regarding the side-effects of his medication.**

Plaintiff contends the ALJ erred when he gave little weight to Plaintiff's testimony regarding the nausea, dizziness, and fatigue he experiences as a side-effects of his medication.

In *Cotton v. Bowen,* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton,* 799 F.2d 1403 (9th Cir.

20  -  OPINION AND ORDER

1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

The ALJ acknowledged Plaintiff suffers from severe impairments that could be expected to cause some symptoms. Tr. 21.  Accordingly, the Court finds Plaintiff has satisfied the first two prongs of the Cotton test by providing evidence of impairments that could reasonably cause him to produce some degree of symptom.  799 F.2d at 1407.

Plaintiff testified the nausea, dizziness, and fatigue that he experiences as side-effects of his medication require him to sit down for an unspecified amount of time about 30 minutes after he takes his pain medication.  Tr. 274.

The ALJ found Plaintiff's testimony was not entirely
credible on the ground that Plaintiff has provided inconsistent
reports of his drug use.  For example, on March 23, 2005,
Plaintiff reported to Dr. Givi he had not used drugs since he was
21, and on April 13, 2005, he reported to Dr. Hoffman he had been
using methamphetamine almost daily for 15 years.  Tr. 193, 174.
In addition, on March 16, 2006, Dr. Carpenter noted Plaintiff was
filling prescriptions for Vicodin from two providers.  Tr. 225,
252.

On this record, the Court concludes the ALJ did not err when
he gave little weight to Plaintiff's testimony regarding the side
effects of his medication because the ALJ provided legally
sufficient reasons supported by substantial evidence in the
record for doing so.

## VI.  The ALJ's hypothetical to the VE.

Plaintiff also contends the ALJ erred at Step Four when he
found Plaintiff can perform his past relevant work and erred at
Step Five when he found Plaintiff can perform work that exists in
substantial numbers in the national economy because the ALJ's
hypothetical to the VE did not include all of Plaintiff's
limitations.

"Hypothetical questions posed to a VE must set out all the
limitations and restrictions of the particular claimant . . . .
If an ALJ's hypothetical does not reflect all of the claimant's

22  -  OPINION AND ORDER

limitations, then "the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Bray v. Comm'r of Social Security Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

As noted, the Court has found the ALJ erred at Step Two when he found Plaintiff's left-shoulder degenerative joint disease is not a severe impairment and failed to address the severity of Plaintiff's left-knee degenerative joint disease and dysthymic disorder.  Accordingly, the effects of these impairments were not considered by the ALJ when he assessed Plaintiff's RFC and posed the hypothetical to the VE.

On this record, the Court concludes the ALJ erred at Steps Four and Five because the ALJ did not include all of Plaintiff's limitations in his hypothetical to the VE.


## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).  When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."  *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

23  -  OPINION AND ORDER

Generally the decision whether to remand this case for further proceedings or for the payment of benefits is within the discretion of the Court. *Harman*, 211 F.3d at 1178.

The Ninth Circuit, however, has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Id*. The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting . . .
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id*. The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

Here, as noted, the ALJ erred at Step Two when he found Plaintiff's left-shoulder degenerative joint disease is not a severe impairment and failed to address the severity of Plaintiff's left-knee degenerative joint disease and dysthymic disorder, and, therefore, several outstanding issues remain. For example, the ALJ did not include all of Plaintiffs impairments in his equivalency analysis at Step Three, nor did the ALJ include the effects of these impairments in his hypothetical to the VE at Steps Four and Five.

Accordingly, the Court finds "outstanding issues" remain

24   -  OPINION AND ORDER

"that must be resolved before a proper disability determination can be made."  The Court concludes on this record, therefore, that remand of this matter for further administrative proceedings is necessary.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 25th day of August, 2009.


____/s/ Anna J. Brown____
ANNA J. BROWN
United States District Judge